IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

UNITED STATES ex rel. NYOKA LEE, ET AL.,

Plaintiffs-Appellants,

v.

CORINTHIAN COLLEGES, et al.,

Defendants-Appellees.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

————————————

**BRIEF OF THE UNITED STATES AS AMICUS CURIAE
IN PARTIAL SUPPORT OF PLAINTIFFS-APPELLANTS**

————————————

STUART F. DELERY
  *Assistant Attorney General*

ANDRÉ BIROTTE JR.
  *United States Attorney*

MICHAEL S. RAAB
  *(202) 514-4053*
SUSHMA SONI
  *(202) 514-4331*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7218*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530-0001*

# TABLE OF CONTENTS

STATEMENT OF INTEREST ..................................................................1

STATEMENT OF THE ISSUES ............................................................3

STATEMENT OF FACTS......................................................................3

    A.  The False Claims Act ..................................................................3

    B.  Proceedings in This Case ...........................................................7

SUMMARY OF ARGUMENT ............................................................11

ARGUMENT .......................................................................................12

    THIS SUIT IS NOT "BASED UPON" THE ALLEGATIONS IN
    THE PRIOR *QUI TAM* ACTIONS FILED AGAINST DIFFERENT
    DEFENDANTS ............................................................................12

CONCLUSION ...................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**

*A-1 Ambulance Serv., Inc. v. State of California*, 202 F.3d 1238 (9th Cir.), *cert. denied*, 529 U.S. 1099 (2000) ........................................................... 14

*In re Natural Gas Royalties Qui Tam Litig.*, 562 F.3d 1032 (10th Cir. 2009), *cert. denied*, 558 U.S. 880 (2009) ..................................................... 19-20

*Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) ..................................... 4

*Schultz v. Devry, Inc.*, No. 07-cv-5425, 2009 WL 562286 (N.D. Ill. Mar. 4, 2009) .................................................................................................. 10

*United States ex rel. Baltazar v. Warden*, 635 F.3d 866 (7th Cir. 2011) ................................................................................ 19, 20, 21, 22

*United States ex rel. Biddle v. Bd. of Trustees of the Leland Stanford, Jr. Univ.*, 161 F.3d 533 (9th Cir. 1998), *cert. denied*, 526 U.S. 1066 (1999) ....................................................................................................... 13, 22

*United States ex rel. Bly-Magee v. Premo*, 470 F.3d 914 (9th Cir. 2006), *cert. denied*, 552 U.S. 1165 (2008) ................................................. 16, 22

*United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371 (5th Cir. 2009) ......................................................................................... 21

*United States ex rel. Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562 (11th Cir. 1994) ...................................................................... 17, 18

*United States ex rel. Devlin v. California*, 84 F.3d 358 (9th Cir. 1996), *cert. denied*, 519 U.S. 949 (1996) ...................................................................... 11

*United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675 (D.C. Cir.), *cert. denied*, 522 U.S. 865 (1997) .......................................... 14

*United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 569 (10th Cir. 1995)............20

*United States ex rel. Found. Aiding the Elderly v. Horizon West*, 265 F.3d 1011 (9th Cir.), *opinion amended on other grounds on denial of reh'g by* 275 F.3d 1189 (9th Cir. 2001) ................................... 15, 16, 18, 21

*United States ex rel. Gear v. Emergency Med. Assocs.*, 436 F.3d 726 (7th Cir. 2006) ........................................................................20

*United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953 (9th Cir. 1995), *cert. denied*, 518 U.S. 1018 (1996) ........................................13

*United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014 (9th Cir. 1999) ................................................................ 10, 18

*United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322 (5th Cir. 2011) ................................................................................15

*United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ................................................................................8, 9

*United States ex rel. Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818 (7th Cir. 2013) ........................................................................ 15, 22

*United States ex rel. Lopez v. Strayer Educ., Inc.*, 698 F. Supp. 2d 633 (E.D. Va. 2010) ........................................................................10

*United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195 (9th Cir. 2009) ........................................................................16

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994) ................................................................ 11, 15

*United States ex rel. Wang v. FMC Corp.*, 975 F.2d 1412 (9th Cir. 1992) ................................................................................13

*United States v. Neifert-White Co.*, 390 U.S. 228 (1968)........................................4

**Statutes:**

False Claims Act ("FCA"):

31 U.S.C. 3729 *et seq* ...........................................................................1, 3

31 U.S.C. 3729(a) ......................................................................................4

31 U.S.C. 3729(a)(1)...................................................................................3

31 U.S.C. 3729(a)(2)-(7)............................................................................3

31 U.S.C. 3730(a) ...................................................................................4, 5

31 U.S.C. 3730(b)(1)..................................................................................4

31 U.S.C. 3730(b)(2)..................................................................................5

31 U.S.C. 3730(b)(4)..................................................................................5

31 U.S.C. 3730(b)(5)................................................................................20

31 U.S.C.  3730(d)(1).................................................................................5

31 U.S.C.  3730(d)(2).................................................................................5

31 U.S.C. 3730(e)......................................................................................6

31 U.S.C. 3730(e)(4)..................................................................................6

31 U.S.C. 3730(e)(4)(A) (2006) .......................................... 1, 3, 6, 9, 14, 16, 17

31 U.S.C. 3730(e)(4)(B)..............................................................................7

Higher Education Act:

20 U.S.C. 1092 .........................................................................................7

20 U.S.C. 1094 .........................................................................................7

20 U.S.C. 1094(a)(20)............................................................................1, 8

18 U.S.C. 287 ...........................................................................................4

28 U.S.C. 517 ...........................................................................................2

Pub. L. No. 111-148, 124 Stat. 901 (2010) ...............................................6

## STATEMENT OF INTEREST

This is an action brought by two relators under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. 3729 *et seq.* The relators alleged that defendant Corinthian Colleges falsely certified compliance with the Higher Education Act's incentive compensation ban, 20 U.S.C. 1094(a)(20), while, *inter alia,* (1) paying bonuses to recruiters based on the number of students recruited, and (2) firing admissions representatives who failed to enroll a minimum number of students. The district court granted the defendants' motion to dismiss for lack of subject matter jurisdiction based upon the False Claims Act's public disclosure bar, 31 U.S.C. 3730(e)(4)(A) (2006), which divested courts of jurisdiction in suits that are "based upon the public disclosure of allegations or transactions" in a federal civil hearing, "unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." As is relevant here, the district court held that prior *qui tam* lawsuits and complaints by *other* relators against *unrelated* major career schools on the

basis of the compensation ban put the government on notice of the relators'
allegations in the present suit against Corinthian Colleges.

Pursuant to 28 U.S.C. 517 and Federal Rule of Appellate Procedure
29(a), the United States submits this brief as *amicus curiae* in support of the
relators' argument that this suit is not "based upon the public disclosure of
allegations or transactions" in the prior *qui tam* actions, for purposes of the
public disclosure bar.  The False Claims Act is the United States' primary
means of recovery for fraud against the federal government, and its *qui tam*
mechanism is intended to reward private citizens for alerting the
government to fraudulent conduct of which it would otherwise be
unaware.  That purpose is ill-served by a reading of the public disclosure
bar that allows the existence of *qui tam* actions against one set of actors in a
large industry to foreclose future actions raising similar fraud allegations
against unrelated members of that industry.  The United States accordingly
submits this brief to urge that the district court's decision on this point be
reversed.

## STATEMENT OF THE ISSUES

During the period at issue here, the False Claims Act's public disclosure bar, 31 U.S.C. 3730(e)(4)(A) (2006), provided that no court shall have jurisdiction over certain *qui tam* suits that are "based upon the public disclosure of allegations or transactions" in federal civil proceedings. The issue addressed by the United States in this appeal is whether the district court properly viewed relators' suit, which challenged specific actions taken by Corinthian Colleges, as "based upon" *qui tam* lawsuits brought by different relators, disclosing identical allegations against unrelated career schools.

## STATEMENT OF FACTS

### A.    The False Claims Act.

The False Claims Act, 31 U.S.C. 3729 *et seq.*, prohibits persons from "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval" to the federal government, 31 U.S.C. 3729(a)(1), as well as from engaging in related deceptive practices, 31 U.S.C. 3729(a)(2)-(7). A person who violates the False Claims Act is

3

typically "liable to the United States Government for a civil penalty * * * plus 3 times the amount of damages which the Government sustains." 31 U.S.C. 3729(a).  In certain circumstances, such persons may also be subject to criminal liability, including a fine and up to five years' imprisonment.  18 U.S.C. 287, 1001; *United States v. Neifert-White Co.*, 390 U.S. 228, 228 n.1 (1968).

Actions under the False Claims Act may be brought either by the Attorney General, or by a private person (a "relator") in the name of the United States (a "*qui tam* suit").[1] 31 U.S.C. 3730(a), (b)(1).  If a relator initiates a *qui tam* suit, the action is brought "for the [relator] and for the United States Government * * * in the name of the Government."  31 U.S.C. 3730(b)(1).

When a private relator initiates a False Claims Act suit, the complaint is initially filed under seal and served only on the United States,

---

[1] "*Qui tam* is short for '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'"  *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 n.2 (2007).

accompanied by a "written disclosure of substantially all material evidence and information the [relator] possesses." 31 U.S.C. 3730(b)(2). The statute provides that the Attorney General shall "diligently * * * investigate a violation under section 3729." 31 U.S.C. 3730(a). Prior to the expiration of the sealing period, the United States must elect whether to intervene and prosecute the action, or to decline and allow the relator to proceed with the suit. 31 U.S.C. 3730(b)(4).

If a *qui tam* suit results in an award of civil penalties or damages, any money recovered is divided between the government and the relator. If the government has intervened in the action, the relator is typically entitled to receive "at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim," plus reasonable expenses, attorneys' fees, and costs. 31 U.S.C. 3730(d)(1). If the government has not intervened, the relator is typically entitled to "not less than 25 percent and not more than 30 percent of the proceeds," plus expenses, fees, and costs. 31 U.S.C. 3730(d)(2).

The False Claims Act sets forth certain limits on federal courts' jurisdiction to hear suits that would otherwise be cognizable under the statute. 31 U.S.C. 3730(e). During the period relevant here, the Act's public disclosure bar provided that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or [General Accounting Office] report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. 3730(e)(4)(A) (2006).[2] The Act defines an original source as "an individual who has direct and

_____

[2] The relators brought suit in 2007, and, on remand, filed an amended complaint in 2011 that added additional claims. In 2010, Congress amended 31 U.S.C. 3730(e)(4) to provide that *qui tam* actions may be dismissed only if they involve "substantially the same allegations or transactions as alleged" in a prior public disclosure. Pub. L. No. 111-148, 124 Stat. 901-02 (2010) (codified as amended at 31 U.S.C. 3730(e)(4)). The district court applied the pre-2010 version of section 3730(e)(4) to all of relators' claims. R._ at 5 n.2 (Order). To the extent that the amended complaint alleges false claims submitted after March 2010, the new version of section 3730(e)(4) would apply to those claims.

independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. 3730(e)(4)(B).

    **B.    Proceedings in This Case.**

Defendant Corinthian Colleges operates approximately 100 for-profit vocational schools nationwide and receives billions of dollars in tuition payments for qualifying students under Title IV of the Higher Education Act, 20 U.S.C. 1094. Relators' Excerpts of Record ("ER") 48 (Order); ER 68 (First Amended Compl.). The Act conditions receipt of such funds on the filing of annual Program Participation Agreements with the Department of Education, certifying the educational institution's compliance with a host of statutory, regulatory, and contractual requirements. 20 U.S.C. 1092, 1094. These requirements include a recruiter incentive compensation ban, prohibiting institutions from "provid[ing] any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any

student recruiting or admission activities or in making decisions regarding the award of student financial assistance."  20 U.S.C. 1094(a)(20). "This requirement is meant to curb the risk that recruiters will 'sign up poorly qualified students who will derive little benefit from the subsidy and may be unable or unwilling to repay federally guaranteed loans.'"  *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 989 (9th Cir. 2011) (citation omitted).

Between 1998 and 2006, relator Nyoka June Lee worked for Corinthian Colleges on three of its California campuses as, variously, Admissions Representative, Senior Admissions Representative, Master Admissions Representative, and Director of Admissions, while relator Talala Mshuja served as an independent test proctor on three of Corinthian Colleges' campuses between August 2000 and 2009.  ER 67 (First Amended Compl.).  In 2007, the relators brought suit under the False Claims Act against their employer, its auditor, and its directors, alleging that Corinthian Colleges falsely certified compliance with the incentive compensation ban, while (1) paying recruiters bonuses "amounting to 2.5%

8

to 10% of their base pay based on the number of students they recruit," and (2) firing admissions representatives who failed to meet specified enrollment quotas.  ER 110-18 (Compl.).  After the United States declined to intervene, the case was unsealed and served on defendants.

The district court dismissed the complaint, and on appeal, this Court reversed and remanded to give the relators an opportunity to amend their complaint.  *Corinthian Colleges*, 655 F.3d at 1000.  On remand, the relators amended their complaint consistent with this Court's opinion, providing more detailed allegations on the ranking and compensation of recruiters based on number of students enrolled, including allegations that a recruiter's success in converting student inquiries into enrollees constitutes the sole determining factor in whether the recruiter receives a raise.  ER 69-70, 72-75 (First Amended Compl.); ER 48-49 (Order).

In March 2013, the district court dismissed the suit for lack of subject matter jurisdiction on the basis of the False Claims Act's public disclosure bar, 31 U.S.C. 3730(e)(4)(A) (2006).  As is relevant here, the district court found that 11 *qui tam* actions and complaints brought by other relators –

some of whom were represented by relators' counsel in this case – alleging that unrelated career schools violated the incentive compensation ban, "put the government on notice of Relators' allegations." ER 55 (Order). In reaching this conclusion, the district court relied on *United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018-19 (9th Cir. 1999), which held that a prior disclosure need not specifically name the FCA defendant, so long as the class of potential wrongdoers is sufficiently narrow that it can be tied to a relatively specific class of wrongdoing; as well as on two district court cases, which held that materially similar FCA cases involving the career education industry, filed prior to 2007, constituted a public disclosure that barred a subsequent *qui tam* suit against a defendant not named in the earlier suits, *United States ex rel. Lopez v. Strayer Educ., Inc.*, 698 F. Supp. 2d 633, 641-42 (E.D. Va. 2010); *Schultz v. Devry, Inc.*, No. 07-cv-5425, 2009 WL 562286, at \*2-3 (N.D. Ill. Mar. 4, 2009).

After concluding that the relators were not original sources of the information on which their allegations were based, the district court dismissed the complaint for lack of jurisdiction. ER 61-65 (Order).

10

## SUMMARY OF ARGUMENT

The public disclosure bar embodies Congress' search for "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own." *United States ex rel. Devlin v. California*, 84 F.3d 358, 362 (9th Cir.), *cert. denied*, 519 U.S. 949 (1996). Courts have accordingly analyzed the provision to reconcile the "twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994).

The district court's decision threatens to upset this careful balance. The existence of fraud complaints against unrelated members of an industry should not insulate the rest of the industry from *qui tam* suits where, as here, the industry is large and the disclosures do not render the defendant and its specific fraudulent acts directly identifiable. Under those circumstances, the disclosure does not provide the federal government

11

with sufficient information to put it on notice of the defendant's fraud. The relators' suit is not "based upon" such a disclosure, which does not identify the specific, allegedly fraudulent conduct on the part of Corinthian Colleges that the relators have recounted and that would otherwise remain unknown. The *qui tam* provisions of the False Claims Act exist precisely in order to encourage such suits, which reveal fraud that the government could not otherwise be expected to discover. The district court erred in concluding otherwise.

ARGUMENT

## THIS SUIT IS NOT "BASED UPON" THE ALLEGATIONS IN THE PRIOR *QUI TAM* ACTIONS FILED AGAINST DIFFERENT DEFENDANTS.

The district court held that 11 prior *qui tam* actions, alleging violations of the incentive compensation ban by career schools *other* than Corinthian Colleges, were sufficient to put the government on notice of the relators' allegations in this case and that this suit is therefore foreclosed by the False Claims Act's public disclosure bar. For the reasons explained below, the district court's analysis is incorrect.

12

**A**.  The central purpose of the *qui tam* provisions of the False Claims

Act is to establish incentives to supplement government enforcement of the

Act, by encouraging insiders privy to a fraud on the government to blow

the whistle on the wrongdoing.  *United States ex rel. Green v. Northrop Corp.*,

59 F.3d 953, 963 (9th Cir. 1995), *cert. denied*, 518 U.S. 1018 (1996).  The

premise underlying these provisions is that such individuals can bring to

light fraud that the government could not readily discover through its own

enforcement efforts.

But "[a] 'whistleblower' sounds the alarm; he does not echo it."

*United States ex rel. Wang v. FMC Corp.*, 975 F.2d 1412, 1419 (9th Cir. 1992).

Once the fraud allegations are public knowledge, the government can be

expected to be on notice of the fraud, and "the relator confers no additional

benefit upon the government by subsequently repeating the fraud

allegations in the complaint." *United States ex rel. Biddle v. Bd. of Trustees of*

*the Leland Stanford, Jr. Univ.*, 161 F.3d 533, 539 (9th Cir. 1998), *cert. denied*,

526 U.S. 1066 (1999).  "Allowing *qui tam* suits after that point may either

pressure the government to prosecute cases when it has good reasons not

to or reduce the government's ultimate recovery." *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 685 (D.C. Cir.), *cert. denied*, 522 U.S. 865 (1997). Thus, to prevent opportunistic *qui tam* relators from capitalizing on public information, Congress divested courts of jurisdiction over *qui tam* suits that are "based upon the public disclosure of allegations or transactions" in a hearing, government report or investigation, or the news media, unless the relator is an original source of the public information. 31 U.S.C. 3730(e)(4)(A) (2006).

To determine whether "allegations or transactions" underlying a fraud claim have been publicly disclosed, a court inquires whether the public disclosure originated in one of the sources enumerated in the statute; and, if so, "whether the content of the disclosure consisted of the 'allegations or transactions' giving rise to the relator's claim, as opposed to 'mere information.'" *A-1 Ambulance Serv., Inc. v. State of California*, 202 F.3d 1238, 1243 (9th Cir.), *cert. denied*, 529 U.S. 1099 (2000) (citation omitted). "In analyzing whether *allegations* of fraud were previously disclosed, we must determine whether there was a public disclosure of fraud which was

14

substantially similar to" the fraud alleged in the relator's claim. *United States ex rel. Found. Aiding the Elderly v. Horizon West*, 265 F.3d 1011, 1015 (9th Cir.), *opinion amended on other grounds on denial of reh'g by* 275 F.3d 1189 (9th Cir. 2001). If the allegations are not substantially similar, the jurisdictional inquiry ends and the relator can proceed to litigate on the merits in district court. *United States ex rel. Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 829 (7th Cir. 2013). This Court considers "transactions" underlying a relator's complaint to have been publicly disclosed where the critical elements of the fraudulent transaction (*i.e.,* the misrepresented state of facts and the true state of facts) were in the public domain. *Found. Aiding the Elderly*, 265 F.3d at 1015 (adopting analysis in *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)).

"[T]he publicly disclosed allegations or transactions need only be as broad and as detailed as those in the relator's complaint." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011). The substance of the disclosure need not contain an explicit "allegation" of fraud, "so long as the material elements of the allegedly fraudulent

'transaction' are disclosed in the public domain." *Found. Aiding the Elderly*, 265 F.3d at 1014; *see also United States ex rel. Bly-Magee v. Premo*, 470 F.3d 914, 919 (9th Cir. 2006), *cert. denied*, 552 U.S. 1165 (2008).

**B**. The district court held that prior *qui tam* actions and complaints filed by relators' counsel, and additional *qui tam* complaints filed by other attorneys, publicly disclosed the allegations in the relators' complaint, within the meaning of section 3730(e)(4)(A). ER 52 n.3, 53 n.4 (Order). Federal civil litigation is one of the sources enumerated in the statute. *See, e.g., United States ex rel. Meyer v. Horizon Health Corp*., 565 F.3d 1195, 1199 (9th Cir. 2009) ("[A] lawsuit can publicly disclose allegations or transactions under the Act.").

However, the content of the disclosure here did not consist of the *same* "allegations or transactions" giving rise to the relators' claim. *See generally Found. Aiding the Elderly*, 265 F.3d at 1014. While the prior *qui tam* actions likewise alleged violations of the incentive compensation ban, that fact should not be dispositive. A great deal of False Claims Act litigation, including *qui tam* litigation, focuses on types of fraud that are common to

particular industries (Medicare overbilling, or underpayment of oil and gas royalties), and familiar to the government. Nonetheless, a relator who brings *particular instances* of such fraud to light performs a valuable service, one that the False Claims act's *qui tam* provisions were intended to encourage.

The identity of the entity that perpetrated a fraud and the method by which it did so are among the most fundamental elements of an allegation or a transaction under the False Claims Act. The relators' *qui tam* action names Corinthian Colleges, its directors, and its accounting firm as defendants. By contrast, the 11 prior *qui tam* actions named, and targeted the conduct of, entirely different career schools, unconnected to Corinthian Colleges. *Cf. United States ex rel. Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562, 567 (11th Cir. 1994) ("Once allegations about a specific defendant have been made in any forum or any means listed in section 3730(e)(4)(A), the information *about that defendant* has been publicly disclosed.").

In concluding that these actions nonetheless barred the relators' suit against Corinthian Colleges, the district court relied on this Court's decision in *United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018-19 (9th Cir. 1999), which held that a public disclosure that focuses on industry-wide fraud or conspiracy by a "narrow class" of suspected wrongdoers, readily identifiable by the government, need not specifically identify the FCA defendant. But the prior *qui tam* actions alleged fraud by 11 individual career schools, out of an industry of more than 2,000 for-profit schools certified to participate in Higher Education Act funding.[3] This Court has made clear that general allegations of fraud in such a large industry will not necessarily bar subsequent, specific fraud claims against a particular defendant. *Found. Aiding the Elderly*, 265 F.3d at 1016 n.5 (general allegations of fraud in nursing home industry do not relate to defendant or any of its facilities, and therefore do not trigger jurisdictional bar); *accord Cooper*, 19 F.3d at 566 ("allegations of widespread

---

[3] *See* http://www.ed.gov/offices/OSFAP/PEPS/index.html (PEPS Data Extract).

18

[Medicare secondary payer] fraud made in sources" in which defendant was not named or directly identified "are insufficient to trigger the jurisdictional bar"); *United States ex rel. Baltazar v. Warden*, 635 F.3d 866, 868 (7th Cir. 2011) ("As far as we can tell, no court of appeals supports the view that a report documenting widespread false claims, but not attributing them to anyone in particular, blocks *qui tam* litigation against every member of the entire industry.").

The size of the for-profit education industry, and the logistical difficulty of investigating every industry participant, distinguish this case from the decisions of other appellate courts that have held that disclosures that did not name the defendant nonetheless barred a later *qui tam* action. *Compare In re Natural Gas Royalties Qui Tam Litig.*, 562 F.3d 1032, 1042-43 (10th Cir.) (disclosures that provided specific details about royalty underpayment scheme, "named a significant percentage of industry participants as wrongdoers and indicated that others in the industry were very likely engaged in the same practices," were sufficient to "set the government on the trail of the fraud" by examining its royalty contracts),

19

*cert. denied*, 558 U.S. 880 (2009); *United States ex rel. Gear v. Emergency Med. Assocs.*, 436 F.3d 726, 728 (7th Cir. 2006) (same, where government report identified specific Medicare billing issue central to the *qui tam* action, and agency inspector general was investigating each of the nation's 125 medical schools, with audits already planned or underway at 49 institutions); and *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 571-72 (10th Cir. 1995) (same, where disclosures revealed that at least two of laboratory's eight sister laboratories were engaged in fraud and government would have little trouble examining operating procedures of the "easily identifiable, [agency]-controlled, and government-owned laboratories"), *with Baltazar*, 635 F.3d at 868 (public disclosure indicating that 57% of Medicare claims from chiropractors are fraudulent was not sufficient to bar suit against one chiropractor, because it still "takes a provider-by-provider investigation to locate the wrongdoers").[4]  Allegations of wrongdoing by 11 career schools

---

[4] The Fifth Circuit reached a similar conclusion in construing the "first-to-file" bar, 31 U.S.C. 3730(b)(5), which provides that once a person brings a *qui tam* action, "no person other than the Government may intervene or bring a related action based on the facts underlying the

*Continued on next page.*

would have provided the government with no reliable basis for evaluating which, if any, of the thousands of other for-profit educational institutions engaged in similar wrongdoing.

Like the *qui tam* action at issue in *Baltazar*, the relators' suit "supplied vital facts that were not in the public domain."  *Baltazar*, 635 F.3d at 869. The relators were Corinthian Colleges' employees, one of whom had worked in admissions.  They identified Corinthian Colleges as a wrongdoer, and provided specific details about how the school designed its recruitment compensation scheme.  ER 72-73, 86-87 (First Amended Compl.).  The 11 prior *qui tam* actions did not recount any of these details about the conduct by Corinthian Colleges, and therefore did not place in the public domain any of the critical elements of the transactions underlying the relators' complaint.  *See generally Found. Aiding the Elderly*,

---

pending action." The court rejected application of the bar to a *qui tam* suit alleging Hurricane Katrina-related flood insurance fraud.  *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 380 (5th Cir. 2009) (prior suit implicated only four insurers out of approximately 95 doing business in affected area, and thus "tells the government nothing" about which of the other insurers, "if any, actually engaged in any fraud").

21

265 F.3d at 1014; *cf. Bly-Magee*, 470 F.3d at 917 (finding public disclosure where relator's earlier complaint and pending complaint both alleged that defendants violated procurement standards, forced the government to purchase unnecessary and duplicative services, gave contracts to irresponsible parties, and falsely certified that they had conducted audits).

For these reasons, the relators' action is not "based upon" the public disclosures in the 11 prior *qui tam* actions and complaints. *Biddle*, 161 F.3d at 537 (a claim is "based upon" public disclosures when the claim repeats allegations that have already been disclosed to the public). The allegation that Corinthian Colleges violated the incentive compensation ban is fundamentally different from the allegation that other career schools committed the same type of fraud. Evidence confirming or refuting allegations in the prior suits against other schools would have no meaningful bearing on whether the allegations against Corinthian Colleges are true. *See generally Baltazar*, 635 F.3d at 868; *Leveski*, 719 F.3d at 832 (no public disclosure bar where relator's allegations "supplied the court with vital facts that were not alleged in [a prior *qui tam* lawsuit against the same

22

defendant]"). In these circumstances, the district court erred in invoking the public disclosure bar here on the basis of the 11 prior *qui tam* actions.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed with respect to the issue addressed in this brief, and remanded for further proceedings.

Respectfully submitted,

STUART F. DELERY
   *Assistant Attorney General*

ANDRÉ BIROTTE JR.
   *United States Attorney*

MICHAEL S. RAAB
   *(202) 514-4053*

 /s/ Sushma Soni
SUSHMA SONI
   *(202) 514-4331*
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7218*
   *U.S. Department of Justice*
   *950 Pennsylvania Ave., N.W.*
   *Washington, D.C.  20530-0001*

NOVEMBER 2013

**CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)**

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Palatino Linotype, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,209 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

<u> /s/ Sushma Soni               </u>
SUSHMA SONI

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2013, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system, and served counsel via the appellate CM/ECF system.

/s/ Sushma Soni
SUSHMA SONI