**Appeal No. 13-55700**

_____

# IN THE UNITED STATES
# COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

## UNITED STATES EX REL. NYOKA LEE, ET AL.,

Plaintiffs-Appellants,

v.

## CORINTHIAN COLLEGES, ET AL.,

Defendants-Appellees.

_____

On Appeal From the United States District Court
for the Central District of California
The Honorable Philip S. Gutierrez, Judge Presiding
(Case No. 2:07-cv-01984-PSG-MAN)

_____

## ANSWERING BRIEF OF DEFENDANT-APPELLEE
## ERNST & YOUNG LLP

_____

ROBERT B. HUBBELL
RYAN W. BORHO
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone:  213.892.5200
Facsimile:  213.892.5454

RYAN G. HASSANEIN
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:  415.268.7000
Facsimile:  415.268.7522

Attorneys for Defendant-Appellee
*Ernst & Young LLP*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Ernst & Young LLP states that it has no parent corporation and that no publicly held corporation owns ten percent (10%) or more of Ernst & Young LLP.

Respectfully submitted,

Dated:  January 6, 2014

MORRISON & FOERSTER LLP


By:    /s/ Ryan G. Hassanein
       Ryan G. Hassanein

*Attorneys for Defendant-Appellee*
Ernst & Young LLP

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ..................................................i

TABLE OF AUTHORITIES ...............................................................iv

INTRODUCTION ...............................................................................1

STATEMENT OF JURISDICTION........................................................4

ISSUES PRESENTED.........................................................................5

RELEVANT AUTHORITIES ...............................................................5

STATEMENT OF THE CASE...............................................................6

STATEMENT OF FACTS ...................................................................11

    A.    Corinthian's Alleged Violation of the Incentive Compensation Ban Was Publicly Disclosed Numerous Times ..............................................................................11

          1.    2005 & 2006 Securities Class Action Complaints ..................12

          2.    2005 Congressional Testimony....................................13

          3.    Additional Public Disclosures Prior to the Filing of Relator's FAC. ...........................................................14

    B.    Role of Relators' Counsel in the Filing of This *Qui Tam* Suit...........................................................................15

    C.    Three Prior *Qui Tam* Suits Filed By Relators' Counsel Against the Auditors of Schools. ......................................17

STANDARD OF REVIEW ..................................................................20

SUMMARY OF THE ARGUMENT .......................................................21

ARGUMENT ...................................................................................23

I.    RELATORS' CLAIM AGAINST EY WAS PUBLICLY DISCLOSED BEFORE THIS ACTION WAS FILED. .............................25

    A.    The Original Complaint is the Relevant Complaint for Purposes of the Public Disclosure Analysis.........................26

    B.    The Allegation That Corinthian Violated The Incentive Compensation Ban Was Publicly Disclosed. .....................28

# TABLE OF CONTENTS
## (continued)

**Page**

    C.    Public Disclosures of Corinthian's Alleged Violation of The Incentive Compensation Ban Also Operate as Public Disclosures As to the Claim Pled Against EY. ................................31

II.    RELATORS ARE NOT ORIGINAL SOURCES OF THEIR CLAIM AGAINST EY. ................................35

    A.    Relators Lack Direct and Independent Knowledge of Their Claim Against EY. ................................36

        1.    The District Court Correctly Concluded That Relator Lee's Affidavit Was a "Sham" ................................39

        2.    The District Court Correctly Denied Relators' Rule 56(d) Request for Discovery to Establish Their Status As Original Sources of Their Claim Against EY. ..................40

    B.    Relators Failed To Provide the Government With Information Concerning Their Claim Against EY Before Filing Suit. ................................42

    C.    Relators Had No Hand In the Public Disclosures At Issue In This Case. ................................43

CONCLUSION ................................44

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arakaki v. Lingle,*
  477 F.3d 1048 (9th Cir. 2007) ...........................................................21

*Chen-Chen Wang ex rel. United States v. FMC Corp.,*
  975 F.2d 1412 (9th Cir. 1992) ...........................................................30

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel.*
  *Wilson,*
  559 U.S. 280, 130 S. Ct. 1396, 176 L. Ed. 2d 225 (2010) ..................24

*Hagood v. Sonoma County Water Agency,*
  81 F.3d 1465 (9th Cir. 1996) .............................................................25

*In re Natural Gas Royalties Qui Tam Litig.,*
  562 F.3d 1032 (10th Cir. 2009) ....................................................32, 33

*Johnson v. Hewlett-Packard Co.,*
  No. 11-17062, 2013 U.S. App. LEXIS 18497 (9th Cir. Sept. 5, 2013) ............21

*Leveski v. ITT Educational Services, Inc.,*
  719 F.3d 818 (7th Cir. 2013) .......................................................30, 31

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,*
  858 F.2d 1376 (9th Cir. 1988) ...........................................................27

*Rockwell Int'l Corp. v. United States,*
  549 U.S. 457, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007) ..................27

*Schindler Elevator Corp. v. United States ex rel. Kirk,*
  __ U.S. __, 131 S. Ct. 1885, 179 L. Ed 2d 825 (2011) ..................24, 34

*United States ex rel. Bagley v. TRW, Inc.,*
  212 F.R.D. 554 (C.D. Cal. 2003) .......................................................10

*United States ex rel. Biddle v. Bd. of Tr. of the Leland Stanford, Jr. Univ.,*
  161 F.3d 533 (9th Cir. 1998) .......................................................20, 25

*United States ex rel. Devlin v. California,*
  84 F.3d 358 (9th Cir. 1996) ...............................................................38

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*United States ex rel. Glaser v. Wounded Care Consultants, Inc.,*
No. 1:05-cv-573-LJM-WTL, 2007 WL 2934885 (S.D. Ind. Oct. 5, 2007).......41

*United States ex rel. Haight v. Catholic Healthcare W.,*
445 F.3d 1147 (9th Cir. 2006) ...................................................................26

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.,*
498 F. Supp. 2d 25 (D.D.C. 2007).............................................................29

*United States ex rel. Jamison v. McKesson Corp.,*
649 F.3d 322 (5th Cir. 2011) .............................................................26, 27, 29

*United States ex rel. Lujan v. Hughes Aircraft Co.,*
162 F.3d 1027 (9th Cir. 1998) ..................................................................20

*United States ex rel. Meyer v. Horizon Health Corp.,*
565 F.3d 1195 (9th Cir. 2009) .......................................................25, 28, 35, 43

*United States ex rel. N. Santiam Watershed Council v.
Kinross Gold USA, Inc.,*
No. C 96-3673 TEH,
1998 U.S. Dist. LEXIS 23755 (N.D. Cal. Mar. 9, 1998) ..................................25

*United States ex rel. O'Keef v. Sverdup Corp.,*
131 F. Supp. 2d 87 (D. Mass. 2001).............................................................26

*United States ex rel. Precision Co. v. Koch Indus.,*
971 F.2d 548 (10th Cir. 1992) ...................................................................28

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.,*
384 F.3d 168 (5th Cir. 2004) ...................................................................3, 26

*United States ex rel. Settlemire v. Dist. of Columbia,*
198 F.3d 913 (D.C. Cir. 1999)..................................................................29

*United States v. Alcan Elec. & Eng'g, Inc.,*
197 F.3d 1014 (9th Cir. 1999) ..............................................................32, 33, 35

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*United States v. Bank of Farmington*,
  166 F.3d 853 (7th Cir. 1999) ........................................................... 35

*United States v. Edwards*,
  595 F.3d 1004, 1012 (9th Cir. 2010), *rehearing, en banc, denied by*
  622 F.3d 1215 (9th Cir. 2010) ........................................................... 8

*United States v. Lemus*,
  582 F.3d 958 (9th Cir. 2009) ........................................................... 36

*Yeager v. Bowlin*,
  693 F.3d 1076 (9th Cir. 2012) ........................................................... 20

**STATUTES**

20 U.S.C. § 1094(a)(20) ........................................................... 2

28 U.S.C. § 1291 ........................................................... 4

31 U.S.C. § 3730(e)(4) ........................................................... *passim*

**OTHER AUTHORITIES**

34 C.F.R. § 668.14(b)(22)(ii)(A) (2010) ........................................................... 8

Fed. R. Civ. P. 56(d) ........................................................... *passim*

## INTRODUCTION

This appeal arises from the district court's order dismissing this *qui tam* action for lack of subject matter jurisdiction under the public disclosure bar of the False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA"). Specifically, the district court concluded that the claims pled by relators Nyoka Lee and Talala Mshuja (together, "Relators") against Corinthian Colleges, Inc. ("Corinthian"), two of Corinthian's former officers, David Moore and Jack Massimino (the "Individual Defendants"), and Ernst & Young, LLP ("EY") are jurisdictionally barred because they are based upon prior public disclosures, and neither Ms. Lee nor Mr. Mshuja come within the "original source" exception to the FCA's public disclosure rule. The factual record overwhelmingly supports the district court's decision.

The claim pled against EY in this case consists of generic allegations and legal conclusions that could be pled against the financial statement auditor of any school accused of violating the statutory requirements of Title IV of the Higher Education Act of 1965 ("HEA"). In fact, as explained further below, Relators' own counsel unsuccessfully attempted to plead this formulaic claim in three prior *qui tam* actions filed against other schools and their respective financial statement auditors.

Relators allege that Corinthian and the Individuals Defendants (collectively, the "Corinthian Defendants") falsely certified to the U.S. Department of Education ("DoE") that Corinthian was in compliance with a provision of the HEA that

1

prohibits schools from paying incentive compensation to recruiters based on their success in recruiting students, 20 U.S.C. § 1094(a)(20) (the "incentive compensation ban"). As a result of these alleged false certifications of compliance, Relators contend that Corinthian was not eligible to participate in various federal student loan programs and therefore owes a "massive liability" – *i.e.* billions of dollars in previously-received federal student loan money – to the DoE. Because this "massive liability" was not disclosed in Corinthian's financial statements, Relators further allege that EY – the auditor of Corinthian's financial statements – falsely stated in its audit opinions that (1) Corinthian's financial statements complied with Generally Accepted Accounting Principles ("GAAP"), and (2) its audits complied with Generally Accepted Auditing Standards ("GAAS"). Based on these allegations, Relators assert that both the Corinthian Defendants and EY (together, "Defendants") violated the FCA.

The district court correctly found that Relators' claims against Defendants are based upon prior public disclosures. Specifically, the district court ruled that Relators' claim against the Corinthian Defendants was based upon (1) allegations in securities class action complaints filed against Corinthian in 2005 and 2006, (2) testimony at a Congressional hearing in 2005, and (3) *qui tam* complaints filed against other career schools.[1] The district court also found that, because Relators'

---

[1]The amicus brief filed by the United States argues that the district court erred to the extent it deemed prior *qui tam* suits filed against other schools as

sf-3363097

claim against EY is premised on their claim against Corinthian, these same disclosures also "apply" to EY "because the government 'could easily identify' Ernst & Young's identity as the auditor of Corinthian's financial statements based on Corinthian's SEC filings."

The district court also correctly found that Relators are not "original sources" of the information upon which their claim against EY is based because neither Relator has the requisite "direct and independent" knowledge of that information. For example, Ms. Lee testified that she did not know that EY was the auditor of Corinthian's financial statements until she started working on this case. Similarly, neither Ms. Lee nor her brother, Mr. Mshuja, knew why EY was named as a defendant in this lawsuit. They both attributed to their counsel, Mr. Levy, the decision to name EY as a defendant in this case. The sworn testimony of Relators

---

public disclosures under the FCA. In taking this position, the United States ignores the Corinthian-specific disclosures at issue in this case and the case law explaining that disclosures should not be viewed in isolation and must, instead, be considered "as a whole." *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 174 n.8 (5th Cir. 2004). Here, when considered "as a whole," the disclosures relied on by the district court show that Corinthian was publicly accused of standing center stage in an industry-wide scheme to violate the incentive compensation ban. Accordingly, while the United States' argument might carry some weight in cases in which the *only* prior public disclosures were directed to other industry participants, they have little relevance here. In any event, the Court need not address this issue because the securities class action complaints and Congressional testimony are more than sufficient – standing alone or "as a whole" – to trigger the public disclosure bar in this case.

sf-3363097

thus confirms that neither Ms. Lee nor Mr. Mshuja has any knowledge of or factual basis for the claim pled against EY. On appeal, Relators do not argue otherwise.

None of the "ten issues" raised in appellants' opening brief ("AOB") provide a legal or factual basis for disturbing the district court's order dismissing the claim pled against EY in this case. Most of those issues concern inapposite procedural matters, the alleged merit of Relators' underlying claims, and the district court's rulings on various discovery and evidentiary issues. The resolution of this appeal only turns on whether Relators' claim against EY is based upon public disclosures and, if so, whether Relators are original sources of the information upon which their claim against EY is based. The hodgepodge of other issues raised in Relators' opening brief are thus mere distractions that do not save Relators' clams from their jurisdictional infirmity.

This Court should, therefore, affirm the district court's order dismissing Relators' claim against EY for lack of subject matter jurisdiction under the FCA's public disclosure bar.

## STATEMENT OF JURISDICTION

For the reasons stated herein, there is no subject matter jurisdiction over this *qui tam* action under the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A). Under 28 U.S.C. § 1291, this Court has jurisdiction over the district court's determination that it lacked subject matter jurisdiction over this action.

4

## ISSUES PRESENTED

I.      Should this Court affirm the district court's order finding that, under the FCA, Relators' claim against EY is based upon prior public disclosures when Corinthian's alleged violation of the incentive compensation ban was publicly disclosed, Relators' claim against EY is necessarily premised on Corinthian's alleged wrongdoing, and EY's identity as Corinthian's financial statement auditor was easily ascertainable from public SEC filings?  The answer is:  Yes.

II.     Should this Court affirm the district court's order finding that, under the FCA, Relators are not original sources of the information upon which their allegations against EY are based when neither Ms. Lee nor Mr. Mshuja have any direct or independent knowledge of that information, Relators failed to provide the government with information concerning their claim against EY before filing this suit, and Relators had no hand in the public disclosures at issue in this case?  The answer is:  Yes.

## RELEVANT AUTHORITIES

The FCA's public disclosure bar provides as follows:

> (A)     No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

sf-3363097

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(A)-(B) (2007).

## STATEMENT OF THE CASE

Relators filed their original complaint on March 26, 2007 ("Original Complaint"). (ER 108.) It was filed under seal, as required by the FCA, to give the government an opportunity to investigate the merits of Relators' claims and decide whether to intervene in this action. In February 2009, the United States informed the district court that it would not intervene in this action. (SER 2129.)

The Original Complaint alleged that Corinthian, "[f]or a period of years, but particularly in 2005," violated and falsely certified its compliance with the incentive compensation ban. (ER 115-116 ¶¶ 25-26.) The basis for this allegation was Corinthian's written policy governing recruiter compensation, a copy of which was attached to the Original Complaint. (ER 128-137.)

As for EY, the Original Complaint alleged that EY conducted two types of audits for Corinthian: (1) an audit of Corinthian's financial statements, and (2) a compliance audit regarding Corinthian's adherence to HEA requirements, including the incentive compensation ban. (ER 119 ¶ 37.) With respect to the financial statement audits, the Original Complaint alleged that EY falsely stated

that Corinthian's financial statements complied with GAAP when, in fact, they failed to disclose "a massive liability" owed to the DoE as a result of Corinthian's alleged non-compliance with the incentive compensation ban. (ER 121 ¶ 47.)[2] Regarding the compliance audits, the Original Complaint alleged that EY falsely stated to the DoE that Corinthian was in compliance with the HEA's incentive compensation ban. (*Id.* ¶ 44.) Finally, the Original Complaint alleged that EY "failed to perform the legally required evaluation to determine if Corinthian's recruiter compensation practices were legal." (*Id.*)

In fact, EY has never served as Corinthian's compliance auditor. Instead, Corinthian hired a *different* firm to conduct audits of Corinthian's compliance with HEA requirements, including the incentive compensation ban. EY, on the other hand, audited Corinthian's financial statements and opined on whether those financial statements were fairly presented in accordance with GAAP. EY's audit reports expressly disclaimed any opinion on Corinthian's compliance with HEA requirements. As noted below, Relators subsequently acknowledged that EY *did not* serve as Corinthian's compliance auditor.

---

[2] Contrary to Relators' allegations, the DoE does not seek the return of all Title IV funding in the event a school violates the incentive compensation ban. Rather, the DoE's formal policy memorandum explains that "the appropriate sanction to consider will be the imposition of a fine" because violations of the incentive compensation ban do not result in a "monetary loss" to the DoE and do not "render a recruited student ineligible to receive student aid funds." (SER 2125.) The premise of Relators' claim against EY – that Corinthian owed a "massive liability" to the DoE – is thus wrong on the merits.

In December 2009, the district court granted Defendants' Rule 12(b)(6) motions to dismiss the Original Complaint.  (SER 2118.)  With respect to Corinthian, the Court concluded that Corinthian's recruiter compensation policy came within the DoE's regulatory "safe harbor" provision because compensation was "not based **solely** on the number of students recruited, admitted, enrolled, or awarded financial aid."  34 C.F.R. § 668.14(b)(22)(ii)(A) (2010) (emphasis added).  The district court also granted EY's Rule 12(b)(6) motion to dismiss on the grounds that Relators' claim against EY was "contingent upon Corinthian Colleges' liability."  (SER 2118.)  Relators were not given leave to amend their complaint.

On appeal, this Court agreed with the district court's substantive ruling. *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984 (9th Cir. 2011) ("*Lee I*").[3]  However, the Court held that Relators should be given an opportunity to

---

[3] Relying on the Court's order in the prior appeal, Relators argue that Defendants are estopped from asserting that the disclosure of illegal recruiter compensation based on enrollment quotas can constitute a public disclosure under the FCA.  (AOB at 47-49.)  This argument is based on a gross mischaracterization of this Court's prior ruling.  The Court did not hold that "quotas" can never be illegal, and EY did not argue to the contrary.  Rather, the Court held that a school's decision to "terminate" a recruiter based on quotas does not violate the incentive compensation ban.  *Lee I*, 655 F.3d at 993.  Separately, collateral estoppel only applies where it is established that "the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated."  *United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010), *rehearing, en banc, denied by* 622 F.3d 1215 (9th Cir. 2010).  Whether, and the extent to which, quotas violate the incentive compensation ban and its safe harbor provision is entirely unrelated

amend their complaint if they could allege that Corinthian's recruiter compensation was, in *practice*, based *solely* on each recruiter's success in recruiting students. *Id.* at 995-96.)

In December 2011, Relators accepted the Court's invitation to amend and filed a First Amended Complaint ("FAC"). (ER 66.) With respect to Corinthian, the FAC alleged that, in practice and contrary to its written policy, Corinthian's recruiter compensation was based *solely* on each recruiter's success in enrolling students. (ER 72.) Specifically, the FAC alleged that the system used by Corinthian to rate the performance of recruiters as "Good" or "Excellent" only considered target enrollment numbers or "quotas." (ER 73-74 ¶ 15.) Unlike the Original Complaint, the FAC alleged that Corinthian's illegal recruiter compensation practices began in 2000. (ER 71.) As for EY, the FAC pled the same allegations as the Original Complaint except that Relators conceded — for the first time — that EY did not conduct Corinthian's compliance audits. (ER 80 ¶ 30.) The allegations in the FAC are thus correctly limited to EY's role as Corinthian's financial statement auditor.

In April 2012, the district court denied Defendants' Rule 12(b)(6) motions to dismiss the FAC. The district court held, however, that the FCA's statute of

---

to the issue presented in this appeal: whether Relators' claim against EY is barred by the FCA's public disclosure rule.

sf-3363097

limitations barred Relators from pursuing their claims based on conduct prior to 2005.  (ER 195.)[4]

Following a case management conference in October 2012, the district court issued a case management order that sequenced discovery to focus, first, on jurisdictional issues before proceeding to merits discovery.[5]

After taking jurisdictional discovery from Relators, Defendants filed Rule 12(b)(1) motions on the grounds that the district court lacked subject matter jurisdiction under the FCA's public disclosure bar.  (ER 968-97; SER 2021-111.)[6]

---

[4] Relators argue that the district court erred in finding that the statute of limitations for allegations of misconduct prior to 2005 were not tolled by Federal Rule of Civil Procedure 15(c)'s relation back doctrine.  (AOB at 49-56.)  As explained in the Corinthian Defendants' concurrently-filed answering brief – EY expressly joins the arguments set forth therein – this argument lacks merit.  In any event, the Court need not reach this issue because the record is more than ample to support the district court's conclusion that Relators' claim against EY is barred by the FCA's public disclosure rule.

[5] Citing *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 558 (C.D. Cal. 2003), Relators argue that the district court erred in expediting jurisdictional discovery regarding whether Relators are "original sources" of their claims.  (AOB at 45.)  *Bagley* stands for no such proposition.  The *Bagley* court addressed the narrow issue of whether the disclosure statements that relators are required to prepare for the government under 31 U.S.C. § 3730(b)(2) are discoverable. 212 F.R.D. at 566.  That issue is not before the Court, and Relators' reliance on *Bagley* is thus misplaced.

[6] Relators argue that Defendants failed to file a statement of uncontroverted facts, pursuant to Central District of California Local Rules 56-1 and 56-3.  (AOB at 45-47.)  Yet none of the Defendants, including EY, filed a Rule 56 motion. Rather, Defendants filed Rule 12(b)(1) jurisdictional motions to dismiss, and no such statement is required.

On March 15, 2013, after briefing and hearing oral argument for each party, the district court granted Defendants' jurisdictional motions.  (ER 65.)[7]  The district court found that Relators' claims against Defendants were based upon public disclosures, and that Relators were not "original sources" of the information upon which their allegations were based.  On April 12, 2013, the district court entered a judgment dismissing this action with prejudice.  (ER 4-5.)  On April 25, 2013, Relators filed notice of this appeal.  (ER 1-2.)[8]

## STATEMENT OF FACTS

### A.     Corinthian's Alleged Violation of the Incentive Compensation Ban Was Publicly Disclosed Numerous Times

Prior to the filing of the Original Complaint in March 2007, Corinthian was publicly accused of violating the incentive compensation ban in securities class action complaints and during a Congressional hearing.

---

[7] Relators argue that, in violation of their due process rights, they were not given notice and an opportunity to be heard on their status as "original sources" of their claims.  (AOB at 5, 43-45.)  As explained more fully in § III.B.1 of the Corinthian Defendants' concurrently-filed answering brief, this argument has no merit.  In opposing Defendants' Rule 12(b)(1) motions, Relators had every opportunity to present whatever evidence they felt established their status as "original sources."  At the hearing on Defendants' Rule 12(b)(1) motions, Relators again had an opportunity to argue their status as original sources.  There was thus nothing improper with the procedure that the district court followed to decide Defendants' Rule 12(b)(1) motions.

[8] A related appeal in this case is docketed at the Court as Appeal No. 13-56121, and arises from the district court's June 6, 2013 order granting Defendants' respective motions for attorneys' fees and sanctions.  (ER 146-158.)

### 1.    2005 & 2006 Securities Class Action Complaints

In 2005, Corinthian was sued in a securities class action in which plaintiffs alleged, among other things, that Corinthian violated and falsely certified its compliance with the incentive compensation ban.  In support of these allegations, the second amended complaint cited statements made by School employees from across the country.  For instance, a "Senior Admissions Representative at the Port Orchard, Washington campus of Bryman College," stated that "hitting target numbers was a condition of employment and determined whether a representative would receive the annual raise of 20% or not."  (SER 1516 ¶ 232.)  In addition, "[a] former Financial Aid officer at the San Francisco campus of Bryman college" allegedly "admitted that Directors of Admissions, Directors of Financial Aid and School Presidents received quarterly bonuses contingent upon meeting target numbers set by corporate and, therefore, had incentive to cheat."  (*Id.* ¶ 231.)  The third amended complaint, filed in 2006, repeated these same allegations and many other allegations regarding Corinthian's alleged violation of the incentive compensation ban.  (SER 1701-04 ¶ 234-44.)

In addition to alleging that Corinthian violated and falsely certified its compliance with the incentive compensation ban, the securities class action complaints alleged that Corinthian's "revenues were grossly inflated during the Class Period as a result of the employment of fraudulent business practices, such as the falsification of documents used to obtain federal financial aid and grants."

12

(SER 1523-24 ¶ 254; SER 1712 ¶ 267.)  The complaints alleged elsewhere that Corinthian "improperly recognized revenue because financial aid payments made by the federal government in reliance on fraudulent records created by [Corinthian] is not convertible or known amounts of cash or claims to cash due to their illegitimate nature and *risk of disgorgement*."  (SER 1526 ¶ 263; SER 1714-15 ¶ 276 (emphasis added).)  The complaints also identified EY as Corinthian's financial statement auditor.  (SER 1548 ¶ 324; SER 1736 ¶ 337.)

## 2.     2005 Congressional Testimony

During a Congressional hearing in 2005, Representative Maxine Waters and a former admissions director of Corinthian, Paula Dorsey, publicly accused Corinthian of violating the incentive compensation ban.[9]  Ms. Dorsey, for example, testified that Corinthian's recruiter compensation was based on "mere admission enrollment numbers and quotas," and that the "main priority" was to meet "admissions target numbers."  (SER 1399.)  Likewise, Representative Waters testified that career schools, including Corinthian, engaged in a "thinly disguised incentive compensation or quota system" which "may have contributed" to "financial aid violations."  (SER 1392.)  Congresswoman Waters specifically

---

[9]*Enforcement of Federal Anti-Fraud Laws in For-Profit Education*, Hearing Before the Committee on Education and the Workforce, U.S. House of Representatives (Mar. 1, 2005).  (SER 1377-402.)

complained that the DoE had failed to "enforce existing law," and "investigate[]

the complaints of multiple Corinthian students."  (SER 1393-94.)

### 3. Additional Public Disclosures Prior to the Filing of Relator's FAC.

Between the filing of the Original Complaint in March 2007 and the filing of

the FAC in December 2011, there were additional public disclosures of widespread

violations of the incentive compensation ban by career schools such as Corinthian.

In 2009 and 2010, Congressional hearings were convened to discuss, among

other things, widespread violations of the incentive compensation ban by higher

education schools.  At a hearing in 2009, the DoE's Deputy Undersecretary

testified that its regulatory safe harbor allowed schools to engage in "what might

otherwise be viewed as improper student recruiting activities."  (SER 1828.)  At a

later hearing in 2010, the Inspector General to the DoE testified that the DoE has

"reviewed compensation plans that are clearly providing direct financial incentives

for recruiters to increase enrollment."  (SER 1839.)

In February 2010, the Government Accountability Office ("GAO")

published a report regarding widespread non-compliance with the incentive

compensation ban.[10]  The report summarized 32 DoE investigations that resulted in

findings that a school had violated the ban, and noted that "[m]any of the violations

---

[10]U.S. Gov't Accountability Office, *Higher Education:  Information on Incentive Compensation Violations Substantiated by the U.S. Department of Education*, GAO-10-370-R, at 2 (Feb. 23, 2010).  (SER 1803-19.)

sf-3363097

involved payments by schools to their staff in the form of bonuses or commissions for successfully enrolling students in the school."[11]  (SER 1805.)

In a notice of proposed rulemaking that was issued publicly in June 2010, the DoE announced the revocation of its regulatory safe harbor provision.  The notice explained that the "safe harbor . . . has led institutions to establish, *on paper*, other factors that are purportedly used to evaluate student recruiters other than the sheer number of students enrolled.  However, *in practice*, consideration of these factors has been minimal at best, or otherwise indiscernible."  (SER 1847.)

## B.    Role of Relators' Counsel in the Filing of This *Qui Tam* Suit.

The depositions of the two Relators revealed that their counsel used Susan Newman — a relator in two of the *qui tam* cases previously filed by Relators' counsel against auditors of other schools (*see infra* Statement of Facts ("SOF") § C) — to recruit Relators to file this suit against Defendants.

In 2006, Ms. Newman invited Mr. Mshuja to attend a dinner in San Jose with herself, Mr. Levy, and Mr. Levy's original co-counsel in this case. Mark

---

[11]Relators point to a second GAO report published in 2010, assert that that report says that "the annual audits of performed by public accountants are the primary mechanism used by the Government to identify violations of the recruiter compensation," and misleadingly contend that "E&Y audit opinion[s] are an essential part of the Government's regulation of the for-profit education companies."  (AOB at 36.)  In fact, when read in context, that GAO report explains that the DoE relies on annual *compliance* audits – not annual *financial statement* audits such as those conducted by EY for Corinthian – to monitor schools for potential violation of the incentive compensation ban.  *United States ex rel. Lee v. Corinthian Colls., Inc.*, No. 10-55037 (9th Cir. Oct. 26, 2010), Dkt. No. 31-1.

Labaton.  (SER 268:19-269:7.)  According to Mr. Mshuja, Ms. Newman invited him to the dinner to encourage him to become "involved" and "take a look at what was going on" at Corinthian.  (SER 269:25-270:18.)  When Mr. Mshuja attended the dinner in San Jose, he was not looking for legal counsel, and "didn't know what was going on."  (SER 273:9-16.)  During dinner, the possibility of suing Corinthian was discussed.  (SER 280:3-5.)  Mr. Mshuja offered to contact his sister, Ms. Lee, because she had worked in the admissions department at Corinthian.  (SER 278:7-14.)

A second dinner meeting followed a few days later in San Mateo.  Ms. Lee did attend that dinner, where she met — for the first time — Mr. Levy, Mr. Labaton, and Ms. Newman.  (SER 268:11-13.)  During the dinner, the possibility of bringing a suit against Corinthian was again discussed.  (SER 286:16-287:23.)  After the second dinner meeting, Mr. Mshuja and Ms. Lee executed a retainer agreement with Mr. Levy and Mr. Labaton.  When Ms. Lee was asked why she retained Mr. Levy as her counsel, she said it was because Mr. Levy "was interested in working with me."  (SER 168:8-10.)  According to Ms. Lee, "[Mr. Levy] felt at that particular time that Corinthian Colleges was involved in some default or whatever, and that he wanted to defend this case right now while we're sitting here."  (SER 168:14-21.)

Prior to meeting Mr. Levy and Mr. Labaton, Ms. Lee had not given any thought to suing Corinthian, had no reason to believe Corinthian committed a fraud

16

on the government, and did not think Corinthian's compensation of admissions staff was improper.  (SER 154:24-156:5.)  Mr. Mshuja also says that he had not given any thought to suing Corinthian before meeting Mr. Levy and Mr. Labaton.  (SER 287:14-20.)  As Ms. Lee put it, Mr. Levy "put this lawsuit together."  (SER 149:22-23.)

In fact, before the Original Complaint was filed in this case, neither Relator even knew that EY was going to be named as a defendant, let alone the basis for the claim pled against EY.  (SER 945:11-25; SER 893:5-8.)  This case is thus a classic example of attorney-driven litigation.

### C.    Three Prior *Qui Tam* Suits Filed By Relators' Counsel Against the Auditors of Schools.

Relators' counsel has tried to bring *qui tam* actions under the FCA against financial statement auditors in the past.  In fact, this is the fourth *qui tam* action that Relators' counsel has filed against the auditor of a school's financial statements based on purported violations of the incentive compensation ban.  All three prior cases were dismissed with prejudice before this action was filed on March 26, 2007.  The generic allegations made in these prior cases constitute public disclosures of the formulaic claim pled against EY in this case.

The crusade of Relators' counsel to impose FCA liability on the financial statement auditor of a school began with the filing of a case captioned *United States ex rel. Newman v. ITT Educational Services, Inc.*, No. 99-3889 (S.D. Tex.)

("*ITT Case*").  Indeed, in briefing the motion to dismiss, Relators' counsel broadly characterized the issue presented to the court as bearing on the entire accounting industry:  whether "'the United States can hold the accounting profession responsible when the Government disburses taxpayer dollars in reliance on the opinions issued by them?'"  *United States ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 504 (S.D. Tex. 2003), *aff'd*, 111 F. App'x 296 (5th Cir. 2004).  Just as Relators allege here, the relators in the *ITT Case* alleged that the financial statement auditor "failed to disclose" the uncertain "legal status" of ITT Educational Services, Inc.'s recruiter compensation practices, and that "this uncertainty meant that ITT faced a '**massive liability**' to the U.S. Department of Education."  *Id*. (emphasis added).  The relators further alleged that the "statements in its opinions on ITT's financial statements" that the auditor had "audited ITT's financial statements in accordance with GAAS, and that the financial statements were prepared in accordance with GAAP" were "false."  *Id*.

The second *qui tam* action that Relators' counsel filed against the financial statement auditor of a school was captioned *United States ex rel. Payne v. Whitman Education Group, Inc., et al.*, No. 03-3089 (S.D. Tex.) ("*Whitman Case*").  The original complaint, filed in December 2002 and unsealed in April 2003, named both Whitman Education Group and its financial statement auditor as defendants. Based on the school's alleged violations of the incentive compensation ban, the relators alleged that "Whitman had a **massive liability** to the [DoE] that was not

18

reported on the financial statements."  (SER 588 ¶ 89 (emphasis added).)  As a result of that undisclosed "massive liability," the relators further alleged that the financial statement auditor "made false statements" to the DoE by representing that it had audited the school's "financial statements in accordance with GAAS, and that the financial statements were fairly presented in accordance with GAAP." (SER 577 ¶ 63.)

The third *qui tam* action that Relators' counsel filed against the financial statement auditor of a school was captioned *United States ex rel. Newman v. Silicon Valley Colleges, et al.*, No. 04-320 (N.D. Cal.) ("*SVC* Case")*.*  Again, based on alleged violations of the incentive compensation ban, the relators alleged that the school owed "**massive liabilities** to the Government that was not reported on their financial statements." (SER 623 ¶ 51 (emphasis added).)  As a consequence, the relators alleged that the financial statement auditor falsely stated to the DoE that its audits were conducted in accordance with GAAS and that the school's financial statements complied with GAAP.  (SER 622 ¶ 45.)

The claim pled against EY in this case is thus a formulaic claim that lacks any allegations specific to EY's audits of *Corinthian*'s financial statements.  To plead this formulaic "massive liability" claim here, Relators only needed to know: (1) the identity of a school that allegedly owed an undisclosed "massive liability" to the DoE as a result of violations of the incentive compensation ban or any other HEA requirement, and (2) the identity of that school's financial statement auditor.

sf-3363097

Once Mr. Levy recruited Relators to file a claim against Corinthian – a claim based upon public disclosures – he only needed to look at Corinthian's SEC filings to determine that EY was Corinthian's financial statement auditor. As explained further below, this *qui tam* action is the precise type of suit that the FCA's public disclosure bar is designed to foreclose.

## STANDARD OF REVIEW

The question of whether the FCA's public disclosure bar applies in a given *qui tam* case is a mixed question of law and fact. A district court's ruling that it lacked subject matter jurisdiction under the FCA's public disclosure bar is reviewed *de novo*. *United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1030 (9th Cir. 1998). A district court's findings of fact in support of that ruling, including whether a particular disclosure is sufficiently similar to a relator's allegations and whether a relator constitutes an original source, are "reviewed for clear error." *United States ex rel. Biddle v. Bd. of Tr. of the Leland Stanford, Jr. Univ.*, 161 F.3d 533, 535 (9th Cir. 1998). Factual findings in support of evidentiary rulings, including whether an affidavit contradicts prior testimony, are also subject to a clearly erroneous standard of review. *Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012). This Court will not overturn a district court's factual findings unless there is a "definite and firm conviction that a mistake has been made." *Lujan*, 162 F.3d at 1030.

20

The denial of Relators' request for discovery under Rule 56(d) is reviewed under an abuse of discretion standard. *Johnson v. Hewlett-Packard Co.*, No. 11-17062, 2013 U.S. App. LEXIS 18497, at *7-8 (9th Cir. Sept. 5, 2013) (unpublished). Procedural rulings are also reviewed for an abuse of discretion. *Arakaki v. Lingle*, 477 F.3d 1048, 1069 (9th Cir. 2007).

## SUMMARY OF THE ARGUMENT

The district court dismissed the claim pled against EY after correctly holding that (1) Relators' claim against Corinthian was based upon public disclosures, (2) public disclosures as to Relators' claim against Corinthian were also public disclosures as to the claim pled against EY, and (3) Relators were not original sources of their claim against EY.

Unable to dispute the fact that they are not "original sources" of *any* information upon which their allegations against EY are based, the gravamen of Relators' attack on the district court's dismissal order is that the district court erred in holding that public disclosures of Corinthian's alleged violation of the incentive compensation ban were sufficient to trigger the public disclosure bar as to EY. (AOB at 32-33.)  Relators are wrong.

The formulaic claim pled against EY is premised entirely on Corinthian's alleged violation of the incentive compensation ban.  Without that alleged violation, Relators would have no basis for arguing that Corinthian owed a "massive liability" to the DoE, and thus no basis to argue that Corinthian's

21

financial statements violated GAAP or that EY's financial statement audits were insufficient under GAAS.  EY's identity as Corinthian's financial statement auditor was also readily ascertainable from Corinthian's SEC filings.  The district court thus correctly held that public disclosures about Corinthian's alleged violation of the incentive compensation ban also constituted public disclosures of the claim pled against EY.  The district court's public disclosure ruling should, therefore, be affirmed.

Even if the claim against EY was considered a standalone claim – a claim not premised on the claim against Corinthian – the securities class action complaints filed against Corinthian publicly disclosed all of the allegations at the heart of Relators' claim against EY.  The class action complaints identified EY as Corinthian's financial statement auditor, and alleged that Corinthian's financial statements violated GAAP because of the "risk of disgorgement" of financial aid funds previously (and allegedly improperly) received from the government.  Those allegations are echoed in Relators' contention here that Corinthian's financial statements violated GAAP because Corinthian owed a "massive liability" to the DoE, and are what give rise to Relators' formulaic claim against EY.  The allegations which comprise Relators' claim against EY, moreover, were copied almost verbatim from the three prior *qui tam* complaints that Relators' own counsel filed against the auditors of other schools' financial statements.

As for the original source prong of the analysis, Relators do not even argue that they are original sources of their claim against EY.  This is not surprising considering the fact that Relators' deposition testimony conclusively established that neither Ms. Lee nor Mr. Mshuja have *any* personal knowledge about EY's audits of Corinthian's financial statements.  The district correctly held that the affidavit Ms. Lee submitted in support of Relators' opposition to Defendants' Rule 12(b)(1) motions was a sham since it was inconsistent with her sworn deposition testimony.  Also, Relators' request for discovery under Rule 56(d) was properly denied by the district court because the information Relators needed to establish their status as "original sources" was uniquely in their possession.

In addition to Relators' utter lack of any direct and independent knowledge of their claim against EY, Relators also failed to provide the government with information concerning their claim against EY before filing this suit, and they had no hand in the public disclosures at issue in this case.  Under Ninth Circuit law, these are two additional and independent reasons why Relators are not original sources of their claim against EY.

The district court's order dismissing EY from this suit should, therefore, be affirmed.

## ARGUMENT

The FCA's public disclosure bar deprives courts of jurisdiction over suits based upon "allegations or transactions" that have been "public[ly] disclos[ed] . . .

23

in a criminal, civil, or administrative hearing, in a congressional, administrative, or [GAO] report, hearing, audit, or investigation, or from the news media," unless the relator "is an original source of the information."  31 U.S.C. § 3730(e)(4)(A) (2007).[12]  An "'original source'" is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information."  31 U.S.C. § 3730(e)(4)(B).

The public disclosure bar exists for the purpose of weeding out opportunistic *qui tam* suits based on publicly disclosed allegations, and courts apply the first prong of the analysis broadly to effectuate this Congressional purpose.  *Schindler Elevator Corp. v. United States ex rel. Kirk*, __ U.S. __, 131 S. Ct. 1885, 1891, 179 L. Ed 2d 825, 834-35 (2011) (discussing the "broad scope" and "broad sweep" of the public disclosure prong).  The original source exception counterbalances the broad public disclosure prong by allowing suits based upon publicly disclosed allegations to proceed if—but only if—they are brought by true whistleblowers.

---

[12]In March 2010, the Patient Protection and Affordable Care Act, Pub. L. 111-148, 124 Stat. 119, modified the language of 31 U.S.C. § 3730(e)(4).  The Supreme Court, however, has held that this amendment does not apply to *qui tam* cases that were "pending" at the time the Act was signed into law on March 23, 2010.  *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1, 130 S. Ct. 1396, 1400 n.1, 176 L. Ed. 2d 225, 229 n.1 (2010).  All references in this brief to § 3730(e)(4) are, therefore, to the prior version of the public disclosure rule, which the district court correctly applied, and which Relators concede applies to this case.  (AOB at 7.)

*See Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1476 n.18 (9th Cir. 1996) (explaining that the "original source test" is the "focus" and "'more exacting'" inquiry of the jurisdictional analysis) (citation omitted).

Relators bear the burden of proving jurisdiction by a preponderance of the evidence. *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1200 (9th Cir. 2009). The public disclosure bar is strictly construed, and any doubts should be resolved against Relators. *United States ex rel. N. Santiam Watershed Council v. Kinross Gold USA, Inc.*, No. C 96-3673 TEH, 1998 U.S. Dist. LEXIS 23755, at *9-10 (N.D. Cal. Mar. 9, 1998) (citing *United States ex rel. Precision Co. v. Koch Indus.*, 971 F.2d 548, 552 (10th Cir. 1992)).

Applying these standards, the Court should affirm the district court's determination that Relators failed to carry their burden of proving subject matter jurisdiction over their claims in this *qui tam* action.

## I.     RELATORS' CLAIM AGAINST EY WAS PUBLICLY DISCLOSED BEFORE THIS ACTION WAS FILED.

"For a qui tam suit to be 'based upon' a prior public disclosure, § 3730(e)(4)(A), the publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations." *Meyer*, 565 F.3d at 1199 (citing *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001); *see also Biddle*, 161 F.3d at 537 ("[A] claim is 'based upon' public disclosure when the claim repeats allegations that have already been disclosed to

the public.").  That a relator derives the allegations in his or her complaint from a source other than the public disclosures is irrelevant.  *United States ex rel. O'Keef v. Sverdup Corp.*, 131 F. Supp. 2d 87, 92 (D. Mass. 2001) ("an action is 'based upon' a public disclosure when the supporting allegations are similar to or 'the same as those that have been publicly disclosed … regardless of where the relator obtained his information") (quoting *United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 324 (2d Cir. 1992)) (emphasis removed).  Thus, so long as the public disclosures precede and are "substantially similar" to Relators' claim against EY, then that claim is deemed "based upon" the public disclosures.

Finally, the "elements of the fraud allegation need not [be] made public in a single document."  *United States ex rel. Haight v. Catholic Healthcare W.*, 445 F.3d 1147, 1151 n.1 (9th Cir. 2006).  Rather, they can come from multiple sources "considered as a whole."  *Reagan*, 384 F.3d at 174 n.8.

## A.    The Original Complaint is the Relevant Complaint for Purposes of the Public Disclosure Analysis.

As an initial matter, the district court was correct to base its public disclosure analysis on the allegations contained in Relators' Original Complaint, filed on March 26, 2007, and Relators do not argue otherwise.

The Fifth Circuit's decision in *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322 (5th Cir. 2011), is on point.  There, the issue addressed was "whether a relator can use an amended complaint to establish jurisdiction when the

sf-3363097

original complaint is lacking." *Id*. at 328. Relying on the "longstanding rule that the amendment process cannot 'be used to create jurisdiction retroactively where it did not previously exist,'" the Fifth Circuit held that the relator's original complaint was the relevant complaint to "define the scope of his action and to determine whether it was based on public disclosures of allegations or transactions. *Id*.; *see also Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) ("Subject matter jurisdiction must exist as of the time the action is commenced.").

Even if, assuming arguendo, the FAC were the relevant complaint for purposes of the public disclosure analysis, there were a slew of additional public disclosures between the filing of the Original Complaint in March 2007 and the filing of the FAC in December 2011. (*See supra* SOF § A.3.) Accordingly, the outcome of the public disclosure analysis is the same irrespective of whether it is based on the Original Complaint or the FAC. Under *Jamison*, however, the proper complaint to use in the analysis is Relators' Original Complaint.[13]

---

[13]When a district court has jurisdiction over an original complaint and an amended pleading adds a new theory of fraud, then courts analyze whether the new theory was the subject of a prior public disclosure based on the allegations in the amended pleading. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 464, 127 S. Ct. 1397, 1403-04, 167 L. Ed. 2d 190, 201 (2007) (analyzing whether the district court lost jurisdiction over a *qui tam* action when a new theory of fraud was set forth in the final pretrial order). As the district court correctly recognized here, however, when a court lacks jurisdiction over an original complaint, an amended complaint "cannot save it." (ER 58-59 (citing *Jamison*, 649 F.3d at 328).)

sf-3363097

**B.    The Allegation That Corinthian Violated The Incentive Compensation Ban Was Publicly Disclosed.**

The district court correctly held that Corinthian's alleged violation of the incentive compensation ban was based upon public disclosures.  (ER 54-55.)

The Original Complaint alleged, in general terms, that Corinthian's written policy governing recruiter compensation violated the incentive compensation ban. As the district court correctly found, these generalized allegations of illegal recruiter compensation were nearly identical to the allegations cast at Corinthian during the Congressional hearing in 2005[14] and in the securities class action complaints[15] filed against Corinthian in 2005 and 2006.  (*See supra* SOF § A.1-2.) Although the allegations are nearly identical, the FCA's jurisdictional bar is triggered by the less-exacting "substantially similar" standard.  *Meyer*, 565 F.3d 1199 (citing *Lujan*, 243 F.3d at 1189).

Relators argue that their allegations were not publicly disclosed because the disclosures at issue only disclosed "quotas," yet, according to Relators, quotas do not violate the incentive compensation ban under this Court's ruling in the prior appeal.  (AOB at 4.)  The district court correctly rejected this fatally flawed

---

[14]Statements made during Congressional hearings qualify as public disclosures within the meaning of the FCA's public disclosure bar.  *See, e.g., Meyer*, 565 F.3d at 1200; 31 U.S.C. § 3730(e)(4)(A).

[15]Complaints and pleadings filed in civil cases qualify as public disclosures within the meaning of the FCA's public disclosure bar.  *Meyer*, 565 F.3d at 1199; *Precision Co.*, 971 F.2d at 553-54.

sf-3363097

argument.  (ER 60.)  As this Court recognized in the prior appeal, enrollment quotas do violate the HEA and the regulatory safe harbor if the quotas constitute the *only* basis for recruiter compensation.  *Lee I*, 655 F.3d at 995-96.  A school's decision to *terminate* a recruiter based on quotas, on the other hand, does not violate the incentive compensation ban.  *Id*. at 993.  Here, the securities class action complaints filed against Corinthian plainly alleged that Corinthian's recruiter compensation, as opposed to its termination decisions, was based on enrollment quotas.  (*See supra* SOF § A.1.)

Under the case law interpreting the FCA's public disclosure, the disclosure of such allegations is more than sufficient to trigger the jurisdictional bar.  "[T]he publicly disclosed allegations or transactions need only be as broad and as detailed as those in the relator's complaint . . . ."  *Jamison*, 649 F.3d 327.  It is "not necessary that a public disclosure contain every factual detail of the alleged fraud."  *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp*., 498 F. Supp. 2d 25, 49 (D.D.C. 2007).  A "conclusory statement implying the existence of provable supporting facts" suffices as a public disclosure."  *Id*. at 48 (internal quotation marks and citations omitted).  Likewise, it is sufficient that "the general practice has already been publicly disclosed."  *United States ex rel. Settlemire v. Dist. of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999).  Therefore, Relators cannot avoid

29

the operation of the public disclosure rule by pointing to nuanced differences between their allegations and the publicly disclosed allegations.[16]

Finally, with only a general citation to *Leveski v. ITT Educational Services, Inc.*, 719 F.3d 818 (7th Cir. 2013), and no pin cite, Relators argue that their suit is not barred by the public disclosure rule because they alleged that Corinthian's misconduct "continue[d] after the public disclosure." (AOB at 31.) Not only did the *Leveski* court not reach this holding, the misconduct alleged in Relators' Original Complaint – the operative complaint for the public disclosure analysis (*see supra* § I.A) – actually *preceded* the securities class action complaints filed against Corinthian. (*Compare* ER 115 ¶¶ 25-26 (Original Complaint alleged Corinthian violated the incentive compensation ban "[f]or a period of years, but particularly in 2005") *with* SER 1404, 1571, 1574, 1759 (class action complaints filed in October 2005 and February 2006).) In fact, the only Relator who worked in Corinthian's admissions department, Ms. Lee, left Corinthian in May 2005. (SER 78:12-16.) Finally, unlike the disclosure in *Leveski* that alleged wrongdoing

---

[16]Relators also argue that there was no public disclosure because Corinthian's "Ad Rep Flash Reports" were never publicly disclosed. This argument fails as a matter of law because it is the public disclosure of an "allegation" of fraud that triggers the FCA's jurisdictional bar, not the purported evidence of fraud. *Chen-Chen Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1418 (9th Cir. 1992). In any event, Corinthian's "Ad Rep Flash Reports" say nothing about Corinthian's recruiter compensation, and only evidence the fact that Corinthian tracked its enrollment statistics. Tracking such statistics is perfectly legal and, indeed, good business practice.

during a specific period of time, 719 F.3d at 829-30, the public disclosures at issue here alleged an ongoing fraud by Corinthian. (SER 1389, 1393, 1580 ¶ 2, 1769 n.2.) Accordingly, and as explained more fully in § II.D of the Corinthian Defendants' concurrently-filed answering brief, *Leveski* provides no basis to overturn the district court's decision.

### C. Public Disclosures of Corinthian's Alleged Violation of The Incentive Compensation Ban Also Operate as Public Disclosures As to the Claim Pled Against EY.

The district court was also correct to hold that Relators' claim against EY is based upon these same public disclosures. (ER 57-58.) The two key findings that support this holding by the district court are amply supported by the record and plain logic.

First, the district court correctly found that Relators' claim against EY rests entirely on the alleged misconduct attributed to Corinthian. Put another way, absent Relators' allegation that Corinthian violated the incentive compensation ban, Relators have no claim against EY. It is Corinthian's alleged violation of the incentive compensation ban that allows Relators to argue that (1) Corinthian owed a "massive liability" to the DoE, and (2) EY should have forced Corinthian to disclose that "massive liability" on its financial statements. This theory of auditor liability is, thus, predicated entirely on Corinthian's alleged wrongdoing and it is nothing more than a legal argument contrived by Relators' counsel – a theory he has tried to pursue three times before. (*See supra* SOF § C.)

Second, the district court correctly found that EY's identity as the auditor of Corinthian's financial statements was easily identifiable from Corinthian's SEC filings.  (ER 57.)  Ever since EY became Corinthian's financial statement auditor in 2002, its audit opinions have been attached as exhibits to Corinthian's annual Form 10-K filings with the SEC.  (*See, e.g.*, SER 810.)  Likewise, Corinthian's annual proxy statements asked Corinthian's shareholders to ratify the Audit Committee's appointment of EY as its independent financial statement auditor.  (SER 820, 827.)  In fact, some of the public disclosures themselves, namely the securities class action complaints, identified EY as Corinthian's financial statement auditor.  (SER 781 ¶ 324.)  Relators do not argue otherwise.

Based on these two findings, the district court correctly held that the public disclosure of Corinthian's alleged wrongdoing constitutes a public disclosure of the claim pled against EY under Ninth Circuit law.  (ER 56-57  (citing *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018-19 (9th Cir. 1999), for the proposition that a public disclosure need not specifically identify a defendant if the government can "easily identify" the defendant based on public information).  As the district court recognized, the Tenth Circuit is in accord.  *See In re Natural Gas Royalties Qui Tam Litig.*, 562 F.3d 1032, 1042 (10th Cir. 2009).

Relators argue that the district court's reliance on *Alcan* is misplaced because, in *Alcan*, neither defendant had a statutory obligation to evaluate and report the conduct of the other defendant to the United States.  (AOB at 35.)  This

argument actually supports EY's position. To the extent that one defendant's legal obligation is predicated upon a second defendant's legal obligation, there is every reason to conclude that the public disclosure of the second defendant's alleged wrongdoing constitutes a public disclosure as to the first defendant as well. Indeed, it is in this sense that Relators' claim against EY depends entirely upon their claim against Corinthian.[17]

Even if Relators' claim against EY was not deemed dependent upon their claim against Corinthian, and was instead viewed as a standalone claim, the securities class action complaints filed against Corinthian, together with the prior qui tam complaints filed by Relators' counsel, publicly disclosed all of the key allegations of Relators' formulaic claim against EY. Specifically, the class action complaints identified EY as the auditor of Corinthian's financial statements. (*See supra* SOF § A.1.) In addition, they alleged that Corinthian's financial statements did not comply with GAAP because of the "risk of disgorgement" of "financial aid payments made by the federal government." (*Id*.) This allegation is, of course,

---

[17] Relators also argue that *In re Natural Gas Royalties Qui Tam Litigation* is distinguishable because the industry-wide disclosures in that case affected companies in the same industry. (AOB at 33.) Here, however, the district court did not cite *In re Natural Gas Royalties Qui Tam Litigation* as an "industry wide disclosure" case. Rather, the district court cited it for the same proposition that this Court recognized in *Alcan*. That is, a public disclosure as to one defendant can constitute a public disclosure as to other defendants if those other defendants were "easily identifiable" and "if the disclosures had encompassed [the] allegations against them." *Alcan*, 197 F.3d at 1018. That is certainly the case here, given the ease with which EY can be identified from Corinthian's SEC filings.

sf-3363097

"substantially similar" to the crux of Relators' formulaic claim against EY, namely that Corinthian's financial statements violated GAAP as a result of the undisclosed "massive liability" allegedly owed to the DoE.  (ER 121 ¶ 47.)  Finally, this entire theory of liability, including all of its generic allegations, was effectively copied from the three prior *qui tam* complaints that Relators' own counsel filed against the financial statement auditors of other schools.  (*See supra* SOF § C.)  Thus, irrespective of whether Relators' claim against EY is viewed as premised on the claim pled against Corinthian, the securities class action complaints and prior *qui tam* complaints filed by Relators' counsel trigger the jurisdictional bar as to the claim pled against EY.

In sum, when "considered as a whole," as they must, the "substantially similar" allegations contained in the securities class action complaints and the 2005 Congressional testimony, together with Corinthian's SEC filings and the prior *qui tam* complaints filed by Relators' own counsel, are more than sufficient to satisfy the public disclosure test.  *See Schindler Elevator Corp.*, 131 S. Ct. at 1891 (discussing the "broad scope" and "broad sweep" of the public disclosure prong as compared to the more exacting original source analysis).

## II.   RELATORS ARE NOT ORIGINAL SOURCES OF THEIR CLAIM AGAINST EY.

This Court has held that a relator must satisfy three requirements in this Circuit to come within the original-source exception to the FCA's public disclosure bar.

First, the relator must have "direct and independent knowledge of the information on which the allegations are based." *Meyer*, 565 F.3d at 1201 (citation omitted). To establish "direct" knowledge, a "relator must show that he had firsthand knowledge of the alleged fraud, and that he obtained this knowledge through his own labor unmediated by anything else." *Alcan*, 197 F.3d at 1020 (internal quotation marks omitted). A relator has "independent" knowledge if the relator proves that he or she knew about the allegations *before* they were publicly disclosed. *Id.*

Second, the relator must voluntarily provide to the government the information that supports his or her claims *before* filing the *qui tam* action. *Meyer*, 565 F.3d at 1201. This rule is strictly applied. *United States v. Bank of Farmington*, 166 F.3d 853, 866 (7th Cir. 1999).

Third, in *qui tam* cases in which public disclosures precede the relator's suit, such as this *qui tam* case, the relator must have "had a hand in the public disclosure of allegations that are a part of . . . [the] suit." *Meyer*, 565 F.3d at 1201 (citing Wang, 975 F.2d at 1417) (internal quotation marks omitted).

The district court's conclusion that Relators "fail to offer any evidence showing that either had independent knowledge of the allegations at issue in the public disclosures" is amply supported by the record. (ER 64.) Moreover, though the district court determined it need not consider whether Relators disclosed the information to the government prior to filing their lawsuit or had a hand in the public disclosures at issue, this Court may affirm the district court's original source ruling on either of those grounds as well. *See United States v. Lemus*, 582 F.3d 958, 961 (9th Cir. 2009) (court may affirm "on any basis supported in the record").

Accordingly, the district court's conclusion that neither Relator qualifies as an "original source" should not be disturbed by this Court.

### A.    Relators Lack Direct and Independent Knowledge of Their Claim Against EY.

As the district court described in detail, Relators' deposition testimony conclusively established that Relators lack direct and independent knowledge of their claim against EY. (ER 62, 64.) In fact, the degree to which Relators lack direct and independent knowledge of their claim against EY is astounding. What minimal knowledge Relators do have was acquired through internet research and conversations with their counsel.

Ms. Lee did not even know EY was the auditor of Corinthian's financial statements until she started working on this case. (SER 890:6-11 ("Q: When did you first learn that Ernst & Young was Corinthian Colleges independent financial

auditor?  A: When I started working with this case.  That's when I found out I didn't know anything about it before that.").)  She also admitted to not knowing why EY was named as a defendant in this lawsuit, and said she would need to talk to Mr. Levy to get the answer to that question.  (SER 890:12-891:10.)

Ms. Lee had no interaction with EY during her employment at Corinthian. (SER 880:6-13.)  She has never seen an EY audit opinion of Corinthian's financial statements.  (SER 877:4-22 ("Q:  Do you know whether Ernst & Young issued clean or qualified audit opinions of Corinthian's consolidated financial statements. A:  I'd have to ask you that.  I don't know anything about that.  Q:  Do you know what a qualified audit opinion is?  A:  Probably one that you prepared.  I don't know.  I don't know about that.").)  She has never seen any of Corinthian's attestation letters certifying Corinthian's compliance with HEA requirements, and she has no knowledge of any standards applicable to an auditor when it tests a school's compliance with applicable laws and regulations.  (SER 878:9-23.)  Nor does Mr. Mshuja.  (SER 935:11-937:8.)

Ms. Lee has no familiarity with any of the auditing or attestation standards EY is alleged to have violated, including AU 317, 341 and 543, and has no reason to believe EY violated any of those standards.  (SER 880:22-881:8 ("Q:  Do you have any reason to believe that Ernst & Young violated [AU 317] in connection with its audits of Corinthian Colleges.  A:  I don't know anything about that so I wouldn't know the answer to that.").)  Ms. Lee also has no reason to believe EY

violated Attestation Standard 501. (SER 882:10-22.) Ms. Lee did not know the basis of the allegations set forth in any of the three key paragraphs about EY in the original complaint, namely paragraphs 37, 44 and 46. (SER 883:14-886:14.) Ms. Lee also had no knowledge of the basis for several key allegations against EY in the FAC, including paragraphs 25, 64, 66 and 91. (SER 886:17-890:5.)

Ms. Lee's brother, Mr. Mshuja, also had no knowledge of how EY conducted its audit of Corinthian's financial statements. (SER 931:8-11, 942:15-18.) He had no interactions with anyone from EY while he was a test proctor at Corinthian or thereafter. (SER 931:12-19.) Mr. Mshuja also never discussed EY's audits of Corinthian's financial statements with anyone, nor has he provided documents concerning EY to the government. (SER 931:16-933:5.) The only information Mr. Mshuja knows about EY is based on Google searches and Wikipedia. (SER 942:19-943:7, 943:22-944:4.) According to Mr. Mshuja, it was Mr. Levy's decision to name EY as a defendant. (SER 945:7-25.)

In sum, Relators' knowledge of their claim against EY is limited to what they learned from their counsel and what they found on the Internet, neither of which is sufficient for Relators to establish their status as original sources entitled to bring a *qui tam* suit based upon public disclosures. *United States ex rel. Devlin v. California*, 84 F.3d 358, 363 (9th Cir. 1996) (finding that "a person who learns secondhand of allegations of fraud does not have 'direct' knowledge within the meaning of 31 U.S.C. § 3730(e)(4)(B)").

The district court's conclusion should be affirmed by this Court.

**1.     The District Court Correctly Concluded That Relator Lee's Affidavit Was a "Sham"**

In support of Relators' opposition to EY's Rule 12(b)(1) motion, the only evidence that Relators submitted to the district court was an affidavit by Ms. Lee. For his part, Mr. Mshuja has not come forward with any evidence whatsoever that he is an original source of the generic claim pled against EY.

The district court correctly held that Ms. Lee's affidavit was a "sham" because it conflicted with the substance of Ms. Lee's deposition testimony.  (ER 63.)  The district court found that the inconsistencies between the affidavit and Ms. Lee's testimony were "clear and unambiguous" and that the affidavit "was not used as a device to elaborate upon, explain, or clarify prior testimony." (*Id.*)  As a result, the district court concluded it could not and would not rely on the affidavit. (*Id.*)

But even if relied upon, the one statement regarding EY in the affidavit does not come close to establishing Ms. Lee's status as an original source of her claim against EY.  Specifically, Ms. Lee's affidavit states as follows:

> After my deposition, I examined the draft of the complaint provided by my lawyers on or around October 11, 2006, which showed that Ernst & Young LLP would be a defendant in the lawsuit.  I know the date because a copy of the cover letter forwarding the draft complaint to the U.S. Attorney was sent to me along with a copy of the draft complaint.

39

(ER 221 ¶ 5.)

Rather than establishing Ms. Lee's status as an "original source," this paragraph confirms that Ms. Lee has no "direct" and "independent" knowledge of her claim against EY.  Indeed, the claim filed against EY was simply recycled by Relators' counsel from the three prior *qui tam* actions he filed against financial statement auditors of other schools, and included in the draft complaint prepared by Relators' counsel.

In sum, the district court was correct to dismiss Ms. Lee's affidavit as a sham, but even if her assertions are given full credit, they still fail to establish her status as an "original source" of the claim pled against EY.

### 2.    The District Court Correctly Denied Relators' Rule 56(d) Request for Discovery to Establish Their Status As Original Sources of Their Claim Against EY.

Relators close their brief by arguing that the district court erred in dismissing the case without allowing them any discovery from Corinthian.  (AOB at 65.) Specifically, Relators argue that they needed merits discovery from Corinthian to respond to EY's Rule 12(b)(1) motion because EY's motion joined in an argument advanced in Corinthian's motion.  (ER 296.)

The district court did not err when it denied Relators' request for relief under Rule 56(d).  (ER 64.)  As an initial matter, Rule 56(d) does not apply to EY's jurisdictional motion under Rule 12(b)(1).  In any event, even if Rule 56(d) were applicable, Relators' request was properly denied for the straightforward reason

sf-3363097

that merits discovery from Corinthian was not "essential" to Relators' opposition to EY's Rule 12(b)(1) motion. To establish their right to relief under Rule 56(d), Relators had to show that they cannot present facts "*essential* to justify [their] opposition" to EY's motion without further discovery. Fed. R. Civ. Proc. 56(d) (emphasis added). Relators did not and cannot make this showing.

EY's motion argued that Relators' claim is jurisdictionally barred under the FCA's public disclosure rule. With respect to the first prong of the jurisdictional analysis, EY's motion identified the *public* disclosures at issue, and those disclosures are a matter of *public* record. As for the second prong of the analysis, all of the information Relators need to establish their status as "original sources" is uniquely in their possession.

An Indiana district court decision, *United States ex rel. Glaser v. Wounded Care Consultants, Inc*., is particularly instructive on this issue. No. 1:05-cv-573-LJM-WTL, 2007 WL 2934885, at *1 (S.D. Ind. Oct. 5, 2007). There, as here in the court below, the defendant moved to dismiss the relator's *qui tam* action for lack of subject matter jurisdiction under the FCA's public disclosure bar. *Id*. The relator sought discovery regarding, among other things, information related to the "public disclosure" prong of the defendants' argument. In addition to staying that discovery request, the court found that discovery from the defendant was unnecessary to rebut the defendants' argument under the "original source" prong of the § 3730(e)(4)(A) inquiry because "Glaser herself is in the best position to know

what the source of her knowledge was." *Id.* The court thus granted a stay of discovery, preventing the relator from obtaining merits discovery—or any other discovery—to respond to the defendant's jurisdictional motion.

Under *Glaser*, discovery from Corinthian was not relevant to the district court's jurisdictional analysis, let alone "essential" to Relators' opposition to EY's Rule 12(b)(1) motion. Accordingly, the district court's denial of Relators' request for relief under Rule 56(d) should be affirmed.

### B.     Relators Failed To Provide the Government With Information Concerning Their Claim Against EY Before Filing Suit.

Though the district court determined it need not reach the issue, Relators also failed to meet their burden of establishing their status as original sources because they utterly failed to establish that they voluntarily provided the government with information about their claim against EY *prior* to filing their complaint in March 2007, as is required by 31 U.S.C. § 3730(e)(4).

In fact, Relators' discovery responses confirm that Relators provided the government with information only *after* filing the original complaint. Relators' initial disclosures identify only one document as supporting their claim. That document is entitled, "Confidential & Privileged Disclosure Statement made to the U.S. Department of Justice pursuant to 31 U.S.C. §§ 3730(e)(4)(b) and 3730(b)(2) Including 402 pages of Internal Communications Between Corinthian Colleges and Relator Nyoka Lee." (SER 953.) In response to EY's interrogatories, Relators

stated that this document was provided to the government on April 26, 2007 — one month **after** Relators filed their original complaint. (SER 960; SER 966-67.)

Moreover, Relators did not even have any information about EY to provide to the government. To be sure, both Relators admitted that they didn't know EY was going to be named as a defendant until after the original complaint was filed in March 2007. (SER 893:5-8; 945:11-25.) It thus comes as no surprise that there is not a single reference to EY in the "402 pages of Internal Communications Between Corinthian Colleges and Relator Nyoka Lee" that Relators belatedly provided to the government on April 26, 2007. (SER 832 ¶ 8.)

Had it reached the question, Relators' failure to disclose such information to the government before filing suit was an independent and sufficient basis for the district court to conclude that Relators are not original sources of their claim against EY. This Court may also find that Relators are not original sources of their claim against EY on this basis and this basis alone.

### C.    Relators Had No Hand In the Public Disclosures At Issue In This Case.

Relators have also utterly failed to carry their burden of establishing that they had a "hand" in the public disclosures at issue in this case, the third requirement of an "original source" under Ninth Circuit law. *Meyer*, 565 F.3d at 1201 (citing *Wang*, 975 F.2d at 1418).

43

Neither Relator ever communicated with the attorneys that filed the securities class action complaints against Corinthian.  (SER 211:24-212:13; 344:23-345:13.)  Likewise, neither Relator ever communicated with Representative Maxine Waters or Paula Dorsey, the two witnesses at the 2005 Congressional hearing who testified regarding Corinthian's alleged violation of the incentive compensation ban.  (SER 211:14-22; 214:16-18; 345:17-346:15.)

Relators' inability to satisfy this third requirement of an "original source" under Ninth Circuit law is yet another independent reason for this Court to uphold the district court's conclusion that neither Relator is an original source of the information upon which their claim against EY is based.

## CONCLUSION

The district court's judgment in favor of EY should be affirmed.

Dated:  January 6, 2014                     Respectfully submitted,

                                            MORRISON & FOERSTER LLP


                                            By:   /s/ Ryan G. Hassanein
                                                  Ryan G. Hassanein

                                                  *Attorneys for Defendant-Appellee*
                                                  Ernst & Young LLP

# CERTIFICATE OF COMPLIANCE

I certify that pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached Answering Brief is proportionately spaced, has a typeface of 14 points or more and contains 10,942 words.


Dated:  January 6, 2014                Respectfully submitted,

                                       MORRISON & FOERSTER LLP


                                       By:   /s/ Ryan G. Hassanein
                                             Ryan G. Hassanein

                                             *Attorneys for Defendant-Appellee*
                                             Ernst & Young LLP

i

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, other than the related appeals in this case which are identified in Appellants' Statement of Related Cases, EY is not aware of any related cases.


Dated:  January 6, 2014                    Respectfully submitted,

                                           MORRISON & FOERSTER LLP


                                           By:   /s/ Ryan G. Hassanein
                                                 Ryan G. Hassanein

                                                 *Attorneys for Defendant-Appellee*
                                                 Ernst & Young LLP

sf-3363097

| 9th Circuit Case Number(s) | 13-55700 |
|---|---|

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CERTIFICATE OF SERVICE

When All Case Participants are Registered for the Appellate CM/ECF System
I hereby certify that I electronically filed the foregoing with the Clerk of the Court
for the United States Court of Appeals for the Ninth Circuit by using the appellate

| January 6, 2014 | CM/ECF system on (date) |

I certify that all participants in the case are registered CM/ECF users and that
service will be accomplished by the appellate CM/ECF system.

| Signature (use "s/" format) | /s/ Ryan G. Hassanein |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*